# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE GLAZIERS, ARCHITECTURAL METAL AND GLASS WORKERS LOCAL UNION # 1399 HEALTH AND WELFARE TRUST,<br><br>　　　　　　　　　　Plaintiff,<br>　vs.<br>TOM McMANUS,<br>　　　　　　　　　　Defendant. | CASE NO. 09cv843 WQH (BLM)<br><br>**ORDER** |

HAYES, Judge:

　　The matter before the Court is Plaintiff's Motion for Summary Judgment. (Doc. # 11).

**BACKGROUND**

　　Plaintiff initiated this action by filing the complaint on April 22, 2009. (Doc. # 1). The complaint alleges Defendant failed to pay dues and contributions to Plaintiff owed pursuant to a Labor Agreement in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1145 and 1132(g)(2) and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. *Id.* Plaintiff alleges that it is the collections agent for employer contributions and dues owed to the Glaziers Architectural Metal and Glass Workers & Resilient Floor and Decorative Covering Workers Union # 1399 of San Diego and Imperial Counties ("the Union") and for three trust funds associated with the Union ("the Trust Funds.") (Doc. # 1 at 2). Plaintiff alleges Defendant, the owner of a business known as Tom's Carpet,

1  signed a Labor Agreement on May 21, 2007, which required him to pay contributions to the
2  Trust Funds based on the number of hours worked by his employees each month as well as
3  dues to the Union. *Id.* at 3. Plaintiff alleges the contributions and dues were to be paid on the
4  15th of each month. *Id.* Plaintiff alleges Defendant was required to file a monthly report
5  "even if no employees performing work covered by the Labor Agreement were employed
6  during the corresponding month." *Id.* Plaintiff alleges the Labor Agreement allows Plaintiff
7  to collect liquidated damages of 10% of the delinquent contributions or $25.00, whichever is
8  greater, if Defendant fails to pay his contributions by the 20th of the month. *Id.* Plaintiff
9  alleges Defendant failed to submit reports and pay contributions as required. *Id.* Plaintiff
10 alleges that it is entitled to audit Defendant's books under the Labor Agreement to determine
11 what contributions it is entitled to. *Id.* at 4. Plaintiff seeks to recover the contributions it is
12 entitled to, liquidated damages, interest on all sums due, attorney's fees and costs, an order
13 requiring Defendant to submit to an audit, and the fees associated with the audit. *Id.* at 4.

14     Defendant, proceeding pro se, filed an answer on June 4, 2009. (Doc. # 5). Defendant
15 filed a verified answer which swore that he did not agree to an audit, that he was not aware of
16 an audit when it took place in 2008, that the auditor did not have access to his business records
17 and that the auditor "acted unethically and unprofessionally." (Doc. # 5 at 1). Defendant
18 states that none of his workers at the time were members of the union and that the union dues
19 and contributions were unreasonable. *Id.* Defendant states a company he was working for at
20 the time told him he would not be paid for the job unless he agreed to "repayment of the
21 $13,000" that the union said he owed. *Id.* Defendant states he felt "strong armed" into signing
22 legal forms and that he was "deceived by . . . the union along with their attorneys." *Id.* at 2.
23 Defendant requests that the complaint be dismissed. *Id.*

24     On October 9, 2009, Plaintiff filed its Motion for Summary Judgment. (Doc. # 11). On
25 November 20, 2009, the Court issued a notice informing Defendant of his obligation to
26 respond pursuant to Federal Rule of Civil Procedure 56(e)(2). (Doc. # 12). The Court ordered
27 Defendant to file his opposition by December 7, 2009. *Id.* at 2. Defendant failed to file an
28 opposition.

# ANALYSIS

## I.  Plaintiff's Contentions

In its Motion for Summary Judgment, Plaintiff contends that it performed an audit of Defendant's business pursuant to the Labor Agreement. (Doc. # 11-1 at 3). Plaintiff contends that the audit was conducted by examining the "certified payroll records obtained from Prospecta Contract Flooring . . . , another signatory employer who subcontracts with Defendant." *Id.* Plaintiff contends that the audit revealed that Defendant failed to report 1,004 hours of labor, which resulted in $11,271.78 of unpaid dues and contributions and $1,054.38 in liquidated damages. *Id.* at 4. Plaintiff contends that it incurred $262.50 in fees for the audit. *Id.* Plaintiff contends that Defendant signed a payment agreement in February of 2009 which required him to pay $15,106.72 plus 10% annual interest on the unpaid balance in $400.00 monthly installments. *Id.* Plaintiff contends that after paying a single monthly installment of $400, however, Defendant defaulted. *Id.* Plaintiff contends that as of October 9, 2009, Plaintiff incurred $14,850 in attorney's fees and $469.00 in costs. *Id.* at 5. Plaintiff contends that in total, Defendant owes Plaintiff $31,061.10. *Id.* Plaintiff contends that the evidence it has attached to its motion establishes that there is no genuine issue of material fact as to Defendant's liability or the amount Defendant owes Plaintiff. *Id.* at 7-8.

## II.  Plaintiff's Evidence

Plaintiff submitted the Declaration of Diane Salazar, the Assistant Vice President of Associated Third Party Administrators, the administrator of the funds. (Doc. 11-2 at 1.) Salazar states Defendant signed the Labor Agreement attached to her declaration as Exhibit A on May 21, 2007. *Id.* at 2. Salazar states an audit was performed on April 3, 2008, which established that between May 1, 2007 and March 14, 2008, Defendant failed to pay contributions for 1,004 hours of work, resulting in $11,271.78 in unpaid contributions and dues. *Id.* at 4. Salazar states the Trust Fund paid $262.50 for the audit. *Id.* at 5. Salazar states that after the audit, Defendant submitted reports from March and December of 2008 which show he owes $1,923.30 in dues and contributions for March of 2008 and $384.64 in dues and contributions for December of 2008. *Id.* Salazar states Defendant failed to pay these amounts,

resulting in $175.20 in liquidated damages on the March 2008 payment and $35.04 in liquidated damages on the December 2008 payment. *Id.* at 5. Salazar states Plaintiff negotiated a Payment Agreement with Defendant in which Defendant acknowledges he owes a total of $15,106.72, which he agreed to repay in monthly payments of $400.00 at a 10% annual interest rate on the unpaid balance. *Id.* Salazar states Defendant made one payment and then defaulted. *Id.* Salazar states Defendant now owes an additional $817.94 in interest on the unpaid balance as well as $182.40 in contributions and dues for January of 2009 and $40.00 in liquidated damages for non-payment. *Id.* at 6. Plaintiff submitted four exhibits with Salazar's Declaration: (1) Exhibit A, the Labor Agreement, (2) Exhibit B, the Audit Report, (3) Exhibit C, the Payment Agreement, and (4) Exhibit D, "an accounting of the current amounts owed by Defendant to Plaintiff. . . ." *Id.*

Articles XII through XV of the Labor Agreement signed by Defendant detail the amounts due per hour worked for the Health and Welfare Plan, Vacation and Holiday Pay, and the Pension Fund. *Id.* at 31-34. A modification of the original agreement sets the rate at $3.20 per hour towards vacation and holiday pay and at $4.60 per hour for the pension fund. *Id.* at 39. Article XVI of the Labor Agreement lays out the rules for paying into the funds, for dealing with delinquent payments, for liquidated damages, and for attorney's fees and court costs associated with suits for nonpayment. *Id.* at 35. The Labor Agreement was signed by Defendant on May 21, 2007. *Id.* at 38.

The Audit Report states Defendant had jobs at Campo Border Patrol Station, UCSD East Campus, and La Mesa Elementary School during the audit period where he payed his employees entirely in cash. *Id.* at 41. The Audit Report states the auditor examined certified payroll records to determine the amount due to Plaintiff and found that there were 1,004 unreported hours, totaling $10,543.80 in contributions, $1,054.38 in liquidated damages, and $727.96 in dues, for a total of $12,326.14. *Id.* With the audit fee of $262.50, the total amount due as of the date of the audit was $12,588. *Id.*

The Payment Agreement is an agreement between Plaintiff and Defendant in which Defendant conceded he owes the union $15,106.72 in unpaid contributions, liquidated

1  damages, and audit fees. *Id.* at 45.  Defendant stipulated that the payroll reports used to arrive
2  at that figure are accurate. *Id.* at 45-46.  Defendant agreed to pay $400 per month beginning
3  February 20, 2009 until the balance was paid off and agreed that he would be charged 10%
4  interest per year. *Id.* at 46. The Payment Agreement contains a clause that if Defendant failed
5  to make any payment or failed to keep current with new contributions, he would immediately
6  owe the entire $15,106.72 to Plaintiff. *Id.* at 46-47.  Defendant signed the Payment Agreement
7  on February 23, 2009.  *Id.* at 50.

8  The Accounting of Amounts Owed shows that Defendant made one $400 payment, and
9  therefore owes $14,706.72 pursuant to the Payment Agreement.  *Id.*  The Accounting
10 calculates that a 10% annual rate of interest on the amount owed from March 20, 2009 to
11 October 9, 2009 equals $817.94.  The Accounting states that new contributions owed for
12 January 2009 are $182.40 per the Defendant's report to Plaintiff and the liquidated damages
13 on those contributions is $35.04. *Id.*  The Accounting states that Plaintiff's costs for litigation
14 as of October 9, 2009 were $469.00 and Plaintiff's attorney's fees were $14,850.00. *Id.*  The
15 Accounting states the total amount now owed is $31,061.10. *Id.*

16 Plaintiff also submitted the Declaration of Kerry K. Fennelly, Plaintiff's attorney. (Doc.
17 # 11-4).  Fennelly states the billing rate for her time is $225 per hour and that she has spent a
18 total of 66 hours working on the case between June 9, 2008 and October 9, 2009, resulting in
19 a bill of $14,850.00 for reasonable fees.  *Id.* at 2.  Fennelly states the filing free for the
20 complaint was $350.00 and the fee associated with personally serving Defendant was $119.00,
21 resulting in $469.00 in costs.  *Id.*

22 **III.   Legal Standard**

23 Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil
24 Procedure where the moving party demonstrates the absence of a genuine issue of material fact
25 and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp.*
26 *v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive
27 law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
28 248 (1986).  A dispute over a material fact is genuine if "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Id.*

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. If the moving party satisfies its initial burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). "Regardless of whether . . . [the nonmoving party] responded at all[] to [a] motion for summary judgment," a court may not grant summary judgment unless the moving party "affirmatively showed" that it is entitled to judgment as a matter of law. *Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003).

In ruling on a motion for summary judgment, the Court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Credibility determinations [and] the weighing of evidence . . . are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

**IV.    Applicable Substantive Law**

Pursuant to ERISA,

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. In a suit to enforce § 1145, in any action on behalf of a plan where a judgment in favor of the plan is awarded, courts must award the plan "the unpaid contributions," "interest on the unpaid contributions," "an amount equal to the greater of the interest on the unpaid contributions or liquidated damages provided for under the plan in an amount not in excess of 20%," "reasonable attorney's fees and costs of the action," and "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2).

Pursuant to the LMRA, "any labor organization which represents employees" may sue on behalf of the employees it represents for violations of labor agreements "in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185.

**V.     Ruling of the Court**

The evidence in the record establishes that Defendant failed to pay contributions and dues to Plaintiff that Defendant was obligated to pay pursuant to the Labor Agreement. Through the audit, Plaintiff established that Defendant owed $12,588 as of the date of the audit pursuant to the Labor Agreement. Defendant conceded that this amount was accurate and conceded that, by February 23, 2009, the amount Defendant owed had increased to $15,106.72 due to Defendant's further failure to comply with the Labor Agreement and additional accrued interest on the $12,588 previously owed. Plaintiff has established that Defendant owes 10% annual interest on the $14,706.72 balance that Defendant still owes pursuant to the Payment Agreement. From the date of Defendant's default to the date the Motion for Summary Judgment was filed, a period of approximately seven months, Plaintiff has established the amount of interest Defendant owes is $817.94.

Plaintiff has also established that Defendant failed to pay $182.40 in contributions and dues for January 2009, however, Plaintiff has not established the amount of liquidated damages owed for January 2009. Pursuant to the Labor Agreement, liquidated damages are 10% of the amount owed, or $10 per trust fund per month, whichever is greater. *See* Doc. 11-2 at 3. The trust funds' administrator states the liquidated damages for January are $40.00, but the Accounting attached to her statement shows the amount as $35.04. *Compare id.* at 6 *with id.* at 51. Plaintiff provides no explanation as to the discrepancy or the source of either number.

Adding the $14,706.72 balance Defendant owes on the Payment Agreement he defaulted on with the $817.94 in interest on that balance and the $182.40 in contributions and dues Defendant failed to pay in January 2009, Plaintiff has established that there is no genuine issue of material fact that Defendant owes $15,707.06 in unpaid contributions and dues, liquidated damages, audit fees, and interest.

Since Plaintiff has carried its burden pursuant to Rule 56, Defendant must "designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Defendant did not file an opposition to the motion for summary judgment, despite notice from

1  the Court that he was entitled to do so.  However, Defendant did file a verified answer which
2  the Court may consider on the motion for summary judgment.  The Court concludes that
3  Defendant's verified answer does not carry his burden to refute Plaintiff's evidence that there
4  is no genuine issue of material fact that Defendant owes the balance on the Payment
5  Agreement, interest on that balance, and contributions and dues for January 2009.

6  Pursuant to 29 U.S.C. § 1132(g)(2), Plaintiff is also entitled to recover "reasonable
7  attorney's fees and costs."  However, Plaintiff has not sufficiently supported its motion for
8  attorney's fees and costs.  The motion for attorney's fees and costs is denied without prejudice
9  to refile.

## CONCLUSION

11  IT IS HEREBY ORDERED THAT Plaintiff's Motion for Summary Judgment is
12  **GRANTED IN PART** and **DENIED IN PART**.  IT IS FURTHER ORDERED that Plaintiff
13  is entitled to $15,707.06 in damages.  Plaintiff shall submit any request for attorney's fees and
14  costs with documentation within sixty (60) days of the date of this order.

15  DATED:  February 18, 2010

**WILLIAM Q. HAYES**
United States District Judge